**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAFET HARACIC; ZEKIJA HARACIC; MUHAREM HARACIC, <br><br> Petitioners, <br><br> v. <br><br> TODD BLANCHE, Acting Attorney General, <br><br> Respondent. | No. 25-3076 <br><br> Agency Nos. <br> A200-995-125 <br> A200-995-126 <br> A200-995-127 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 8, 2026[**]
Portland, Oregon

Before: CHRISTEN, HURWITZ, and BADE, Circuit Judges.

Safet Haracic, Zekija Haracic, and Muharem Haracic petition for review of

an order of the Board of Immigration Appeals (BIA) denying their motion to

reopen, which asserted that they received ineffective assistance of counsel.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Because the parties are familiar with the facts, we do not recount them here. We have jurisdiction pursuant to 8 U.S.C. § 1252 and review the BIA's denial of a motion to reopen for abuse of discretion. *Martinez-Hernandez v. Holder*, 778 F.3d 1086, 1088 (9th Cir. 2015) (per curiam). We deny the petition.

To establish ineffective assistance in removal proceedings, a petitioner "must demonstrate that counsel's conduct was egregious, in that it rendered the proceeding so fundamentally unfair that [he] was prevented from reasonably presenting his case." *Hernandez-Ortiz v. Garland*, 32 F.4th 794, 801 (9th Cir. 2022) (citation modified). The petitioner "must also show substantial prejudice, meaning that counsel's performance was so inadequate that the outcome of the proceeding may have been affected by the alleged violation." *Id.* (citation modified).

1. Petitioners argue that their counsel was deficient because he failed to present evidence explaining why Safet did not apply for asylum when he temporarily left Bosnia and Herzegovina to live in Italy. But Safet testified before the Immigration Judge (IJ) that he went to Italy to do de-mining work and did not apply for asylum there because he had left his family back in Bosnia. The information Petitioners fault counsel for not presenting was, in fact, presented, so

they cannot establish that counsel's conduct was deficient. *See id.*[1]

2.  Zekija and Muharem contend the BIA erred by applying an overly onerous legal standard when analyzing whether they were prejudiced by counsel's allegedly deficient performance. But the BIA's decision correctly recognizes that establishing prejudice requires articulating a plausible claim for relief. *See Martinez-Hernandez*, 778 F.3d at 1088 (stating that a petitioner cannot show prejudice without demonstrating, "at a minimum, that the asserted ground for relief is at least plausible"). Nothing in the BIA's decision suggests the agency demanded that Zekija and Muharem establish that, in the absence of counsel's deficient performance, they would have been granted relief.

3.  Zekija and Muharem contend the BIA erred by concluding that their individual asylum claims failed for the same reasons as Safet's. The BIA correctly recognized that Zekija's and Muharem's claims—like Safet's—rested primarily on feared harm based on religion and nationality, and reasonably concluded that a fundamental change in country conditions, as described by the IJ in denying Safet's claim, rebutted any objectively reasonable fear of future persecution. *See Singh v. Holder*, 753 F.3d 826, 832–34 (9th Cir. 2014). As for Zekija's fear that

---

[1] To the extent Petitioners argue that counsel failed to apprise the IJ of the proper standards for humanitarian asylum, they do not identify any misstatement of law by counsel and the record shows that the IJ properly applied the correct legal standards.

she would be harmed by those who viewed her father and husband as traitors, the BIA concluded that Zekija had not established nexus and Zekija does not explain how this finding is erroneous.

4. Zekija and Muharem argue the BIA relied too heavily on country conditions reports in analyzing their fear of future persecution. The BIA's analysis, which incorporated the IJ's decision, complied with our precedent. Although "a State Department report on country conditions, standing alone, is not sufficient to rebut the presumption of future persecution," the IJ did not merely cite country conditions reports. *Kamalyan v. Holder*, 620 F.3d 1054, 1057 (9th Cir. 2010) (citation modified). Instead, the IJ conducted a detailed analysis to arrive at "an 'individualized determination' of how the changed circumstances affect[ed] [Safet's] specific situation." *Parada v. Sessions*, 902 F.3d 901, 912 (9th Cir. 2018) (citation modified); *Singh*, 753 F.3d at 834. The IJ recognized that Safet had remained in Bosnia for years without incident and had every intention of returning to Bosnia when he originally came to the United States with his family on a tourist visa.

5. Zekija and Muharem argue the BIA failed to consider whether they may have been eligible for a grant of humanitarian asylum. But Petitioners' motion to reopen did not make this argument. Thus, the BIA did not have "an opportunity to

pass on tph[e] issue," and it is unexhausted. *Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023) (citation modified).

**PETITION DENIED.**[2]

---

[2] Petitioners filed a motion to stay removal (Dkt. 6), which the government opposed (Dat. 9). Petitioners' removal was temporarily stayed pursuant to General Order 6.4(c). Given the disposition of this petition for review, the motion to stay removal is **DENIED**, and the temporary stay of removal entered pursuant to General Order 6.4(c) is lifted.